Ron Kilgard, Bar No. 005902
Keller Rohrback L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
(602) 248-0088
rkilgard@kellerrohrback.com

***Attorney for Plaintiff***
(*additional counsel listed at signature block*)

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Brittany Lamb, individually and on behalf of all other similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>JPMorgan Chase Bank, N.A., and Early Warning Services, LLC d/b/a Zellepay.com,<br><br>Defendants. | No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Brittany Lamb ("Plaintiff") brings this Complaint, by and through her attorneys and on behalf of all others similarly situated, against Defendants JPMorgan Chase Bank, N.A., ("Chase") and Early Warning Services, LLC d/b/a Zellepay.com ("Zelle") (collectively, "Defendants") and alleges as follows:

## I.      INTRODUCTION

1.      Plaintiff is a victim of a scam by an unknown party targeting Chase customers in connection with the Chase/Zelle mobile app, resulting in $4,000 being debited from Plaintiff's bank accounts without Plaintiff's authorization.

2.      This type of Zelle scam is well-known to Defendants. Indeed, Chase is a part owner of Zelle. However, because it would be costly to them, Defendants have not taken appropriate steps to protect consumers, including Plaintiff, from such scams, which often result in losses of thousands of dollars to individual consumers and Chase customers.

3.      In enacting the Electronic Fund Transfer Act ("EFTA"), Congress found that the use of electronic systems to transfer funds provides the potential for substantial benefits to consumers. 15 U.S.C. § 1693(a). Congress' purpose in enacting EFTA was to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems. The primary objective of [EFTA] is the provision of individual consumer rights." *Id.* § 1693(b).

4.      Plaintiff files this lawsuit on behalf of herself and other similarly situated consumers to vindicate their rights, and because they should not be responsible for shouldering the burden for the unauthorized transactions Defendants are obligated to prevent and remedy.

## II.      PARTIES[1]

5.      Plaintiff Brittany Lamb is a natural person, a citizen of Arizona, and a resident of Tempe, Arizona. She maintains a personal Chase bank account and accesses her account through the Chase mobile banking app.

---

[1] Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants, respectively.

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

6.      Defendant JPMorgan Chase Bank, N.A., is an American national bank headquartered in New York, New York that provides consumer and commercial banking services through banking stores, the internet, and other distribution channels to consumers, businesses, and other institutions in all 50 states and in foreign countries.

7.      Defendant Early Warning Services, LLC d/b/a Zellepay.com ("Zelle") is a limited liability company established under the laws of Delaware with its principal place of business in the State of Arizona.

8.      Zelle is a money payment platform ("MPP") that facilitates peer-to-peer ("P2P") instant payment services. Zelle is owned by seven large banks in the United States, including Chase.

9.      Upon information and belief, Zelle makes money by facilitating payments with participating banks, including Chase.

### III.    JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises out of violations of federal law under the EFTA, 15 U.S.C. §§ 1693. Jurisdiction of this Court arises pursuant to 28 U.S.C. §§ 1331 and 1367 for supplemental jurisdiction over the statutory and common law claims arising from the same or substantially similar transactions that form the basis of the EFTA claim.

11.     The Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453, & 1711–15, because: (i) this is a class action and the matter in controversy exceeds the sum of $5,000,00, *id.* § 1332(d)(2); (ii) Plaintiff is a citizen of one state and one of the Defendants is a citizen of another state, *id.*

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

§ 1332(d)(2)(C); (iii) Defendants are not government entities against whom the District Court may be foreclosed from ordering relief, *id.* § 1332(d)(5)(A); and (iv) there are more than one hundred people in the putative class, *id.* § 1332(d)(5)(B).

12.     This Court has personal jurisdiction over the Defendants because they do business in this District and intentionally availed themselves of the privilege of doing business within this District, and in doing so injured Plaintiff, a resident of this District, so as to render the exercise of jurisdiction by this Court just and proper.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's causes of action occurred in this judicial district.

## IV.     BACKGROUND ALLEGATIONS ON ZELLE SCAMS

14.     Created and owned by America's largest banks[2] to enable digital money transfers, Zelle comes embedded in banking apps and is now America's most widely used money transfer service, outpacing its closest rival (Venmo) with $260 billion in transfers in 2021.[3]

15.     Zelle serves to save the participating banks money by minimizing the fees the banks are charged for competitor P2P payment transactions.

---

[2] Bank of America, Capital One, JPMorgan Chase, PNC Bank, Trust, U.S. Bank, BB&T (Truist), and Wells Fargo.

[3] Stacey Cowley and Lananh Nguyen, "Fraud is Flourishing on Zelle. The Banks Say It's Not Their Problem." N.Y. Times (March 6, 2022) https://www.nytimes.com/2022/03/06/business/payments-fraud-zelle-banks.html.

16.     In 2020, an estimated 18 million Americans were defrauded through P2P payment apps, including Zelle.[4]

17.     It is free to sign up with Zelle, and Zelle is integrated into Chase's websites and mobile app.

18.     Zelle users can send money to other registered Zelle users. They can also attempt to send money to unregistered recipients, in which case the intended recipient will receive an invitation to sign up for the service in order to complete the transaction. Users access the Zelle network within bank websites, through the Chase/Zelle mobile app, or through apps of other Zelle-participating U.S. financial institutions.[5]

19.     Zelle advertises its money transfer services to consumers by claiming that it is "[a] fast, safe and easy way to send and receive money." It also urges consumers to use Zelle "to send money to friends and family, even if they bank somewhere different than you do."[6]

20.     Chase similarly advertises its mobile banking app services by featuring their convenience and security measures, and urges consumers to "tap into convenience and security on the go"[7] and claims the mobile app allows consumers to "safeguard your money" with Chase's "secure technology" including touch ID, face ID, and also fingerprint

---

[4] *Id.*

[5] Zelle encourages consumers to "pay it safe" by "look[ing] for Zelle in your banking app[.]" "How to Pay it Safe with Zelle," https://www.zellepay.com/financial-education/pay-it-safe (last accessed July 5, 2022).

[6] "Safely send money to friends and family, no matter where they bank." https://www.zellepay.com/how-it-works (last accessed July 5, 2022).

[7] "Do more with the Chase Mobile app." https://www.chase.com/digital/mobile-banking (last accessed July 5, 2022).

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

logins "for quick and secure account access."[8] Chase also promotes Zelle to its customers, urging them to send money from within the Chase mobile app: "Send and receive money in moments. And access it instantly—no fee—with Zelle."[9]

21.     Chase also pays to advertise and promote Zelle on Twitter, and tells customers they should not "worry," because the money is in the Chase Mobile app.



22.     The immediacy of Zelle's service has made it a favorite among consumers, but that immediacy has also made it a favorite among criminals, who can access bank accounts directly, which they cannot do with similar P2P platforms. Once scammers can scare or trick their victims into sending money via Zelle, "they can siphon away thousands of dollars in seconds."[10]

23.     Defendants' marketing advertisements do not warn potential users of the risks of being scammed by persons impersonating their banks. Consumers are not aware that transactions with the Chase/Zelle app differ from other similar platforms.

24.     In one instance involving a consumer who called their bank to report losing $500.00 because of a Zelle scam, the customer service representative indicated that "'[a]

---

[8] *Id.*

[9] *Id.*

[10] Stacey Cowley and Lananh Nguyen, "Fraud is Flourishing on Zelle. The Banks Say It's Not Their Problem." N.Y. Times (March 6, 2022) https://www.nytimes.com/2022/03/06/business/payments-fraud-zelle-banks.html.

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

lot of people are getting scammed on Zelle this way'" and that "[g]etting ripped off for $500 was 'actually really good,' . . . because 'many people were getting hit for thousands of dollars.'"[11]

25.     Zelle, and the banks that own Zelle, are aware of the widespread fraud through Zelle but are doing virtually nothing to stop it or to educate consumers about the risks of using Zelle, and doing little to nothing to help consumers get their money back.[12]

26.     On information and belief, Chase uses Zelle, which it owns, to insulate itself from financial liability for unauthorized transactions.

27.     Recent Consumer Financial Protection Bureau guidance on unauthorized Electronic Funds Transfers ("EFTs") indicates that P2P payments, such as transactions made with Zelle, are EFTs. As such, financial institutions implementing P2P payments have "error resolution obligations" to consumers to protect them from situations where they are fraudulently induced and requested by a third party to provide their account information, resulting in authorized debits from their accounts.[13]

28.     Additionally, the Federal Deposit Insurance Corporation ("FDIC") issued a report in March 2022 finding that Regulation E's "liability protections for unauthorized

---

[11] *Id.*

[12] *Id.*

[13] "Electronic Fund Transfers FAQs," Consumer Financial Protection Bureau, https://www.consumerfinance.gov/compliance/compliance-resources/deposit-accounts-resources/electronic-fund-transfers/electronic-fund-transfers-faqs/#financial-institutions-2 (last updated December 13, 2021).

transfers apply even if a consumer is deceived into giving someone their authorization credentials."[14]

29.    The FDIC further stated that "[c]onsumer account disclosures cannot limit protections provided for in the regulation."[15] The FDIC stated that both the banks and MPPs are considered "financial institutions" under Regulation E, and as such have investigative and error resolution obligations under Regulation E.[16]

30.    Even so, Defendants have failed to conduct proper investigations of Plaintiff's and Class Members' fraud and error reporting, and have neither reversed nor refunded Plaintiff's funds that were taken through the disputed and unauthorized transactions, though obligated to do so pursuant to Regulation E.

31.    On information and belief, Defendants do not reimburse consumers for losses incurred as a result of unauthorized EFTs due to fraud, even where the losses are timely reported by consumers.

## V.    PLAINTIFF'S FACTUAL ALLEGATIONS

32.    Plaintiff is a victim of a sophisticated scam in which scammers mimicked Chase's identity, as well as the means of communication typically used by Chase to communicate with customers in the event of actual fraud.

---

[14]    "Consumer Compliance Supervisory Highlights Federal Deposit Insurance Corporation," (March 2022), https://www.fdic.gov/regulations/examinations/consumer-compliance-supervisory-highlights/documents/ccs-highlights-march2022.pdf.
[15] *Id.*
[16] *Id.*

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

33.    Plaintiff's cellular telephone number and her use of Chase and Zelle are nonpublic personal information.

34.    On or about April 23, 2022, Plaintiff received a text from a number purporting to be Chase, asking whether Plaintiff had authorized a $2,000 Zelle payment from her account.



35.    Plaintiff texted back "no," and within seconds, received an incoming call from what appeared to be Chase's customer service line at (800) 935-9935. The caller stated that they were from Chase and instructed Plaintiff to "Zelle" the $2,000 back to herself, using her own name and phone number.

36.    Plaintiff was instructed to use the Zelle app and put "JP Morgan Chase Fraud Dispute" in the payment memo of the $2,000 to be sent back to herself.

37.    The caller suggested that Plaintiff change her login credentials, further providing a sense of legitimacy and assurance that Plaintiff was speaking to a Chase representative.

38.    Plaintiff was told by the caller purporting to be a Chase representative that if the funds did not return to her account, a "hard reset" of her Chase account would be

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

performed by Chase. The caller also asked which time worked best for her to be called the next day.

39.     The process was repeated the next day, April 24, 2022, with a call from what appeared to Plaintiff to be the Chase customer service phone number.

40.     On April 25, 2022, Plaintiff received a call from (805) 392-3278. When Plaintiff answered the phone, she recognized the voice from the previous calls as the person who called previously. The caller attempted again to have Plaintiff "Zelle" money for the purpose of completing another "hard reset" so that her Chase account would be secure.

41.     At that time, Plaintiff realized that the previous calls were not from Chase. Five minutes later, Plaintiff called Chase directly at (800) 935-9935 and explained what had happened. She had been scammed out of $4,000.

42.     Chase assigned Plaintiff a claim number and instructed her to fax any relevant information to them and to reference her claim number. She did so, faxing screenshots of the calls received as well as the Zelle transactions taken from her account.

43.     On April 26, 2022, Plaintiff received a message from Chase in the secure message center stating that Chase "generally" has "no recovery rights for a scam."

44.     Plaintiff responded to Chase's message by reminding Chase of its obligations under EFTA, Regulation E.

45.     Nonetheless, Chase declined to conduct a proper investigation or refund or reverse any of the funds.

46.     At no point were Plaintiff's concerns regarding Chase's obligations under EFTA addressed.

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

47.     Chase informed Zelle of the "activity" on Plaintiff's account and of Plaintiff's attempt to recover funds.

48.     On April 25, 2022, Plaintiff also submitted complaints to Zelle regarding the unauthorized transactions on her account, one for each transaction number.

49.     Like Chase, Zelle also declined to conduct a proper investigation or refund or reverse any of the funds.

50.     Plaintiff filed separate complaints against each defendant with the CFPB, and Defendants still declined to refund Plaintiff her money.

51.     Plaintiff has received no further response from either of the Defendants regarding the above unauthorized transactions.

## VI.   CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated.

53.     Plaintiff is a member of and seeks to represent a nationwide Class, pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2) and/or (b)(3), defined as:

> All Chase bank customers within the United States whose bank accounts with Chase were debited via one or more transactions using the Chase/Zelle mobile application and that were not permanently credited by Defendant/s in full within 45 days of a dispute by the customer and/or the consumer's authorized representative concerning the transaction(s).

54.     Additionally, Plaintiff is a member of and seeks to represent an Arizona Sub-Class, pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2) and/or (b)(3), defined as:

> All Chase bank customers residing in Arizona whose bank accounts with Chase were debited via one or more transactions using the Chase/Zelle mobile application and that were not permanently credited by Defendant/s in

full within 45 days of a dispute by the customer and/or the consumer's authorized representative concerning the transaction(s).

55.    Excluded from the Class and Sub-Class are Defendants' officers, directors, and employees; any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Further excluded from the Class and Sub-Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

56.    Plaintiff reserves the right to modify the proposed class definitions, including but not limited to expanding the class to protect additional individuals and to assert additional sub-classes as warranted by additional investigation.

57.    The proposed Class and Sub-Class meet the criteria for certification under Rule 23(a), b(2), and b(3).

58.    Numerosity: The members of the Class and Sub-Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Chase/Zelle scam has resulted in authorized debit transactions for thousands of individuals.

59.    Commonality: There are questions of law and fact common to the Class and Sub-Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.    Whether Plaintiff and the Class lost money that was transferred from their account via Zelle;

b.    Whether Plaintiff and the Class are customers of Chase at the time of

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

the unauthorized transactions;

c.      Whether Plaintiff and the Class are customers of Zelle at the time of the unauthorized transactions;

d.      Whether Defendants violated EFTA by failing to adequately investigate the unauthorized transactions of Plaintiff and the Class;

e.      Whether Defendants violated EFTA by failing to correct errors on the accounts of Plaintiff and the Class within 45 days of the transactions being disputed;

f.      Whether the transactions at issue were unauthorized EFTs, by way of a third party fraudulently obtaining access to Plaintiff's and Class Members' accounts through fraudulent inducement, making such transactions errors subject to EFTA's remedial provisions, including Regulation E;

g.      Whether Plaintiff and the Class are entitled to maximum statutory damages, costs, and fees under EFTA;

h.      Whether Defendants' conduct constitutes a "deceptive or unfair act or practice. . . in connection with the sale or advertisement of any merchandise" as defined by Ariz. Rev. Stat. §§ 44-1521;

i.      Whether Plaintiff and the Sub-Class are entitled to maximum statutory damages, costs, and fees under Ariz. Rev. Stat. §§ 44-1521;

j.      Whether Plaintiff and the Sub-Class are entitled to injunctive relief under Ariz. Rev. Stat. §§ 44-1521;

k.      Whether Defendants were negligent in their actions and/or omissions;

l.      Whether Defendants have been conferred an enrichment by keeping

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

funds that they were obligated to replace pursuant to Regulation E's error resolution obligations.

60.     Typicality: Plaintiff's claims are typical of those of other Class and Sub-Class Members because Plaintiff was induced by a third party to cause a withdrawal of funds from Plaintiff's Chase accounts to occur through the Chase/Zelle app(s). After disputing the unauthorized transactions, Plaintiff was informed by Chase that the unauthorized transactions would not be reversed.

61.     Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of Class and Sub-Class Members. Plaintiff's Counsel are competent and experienced in litigating consumer class actions.

62.     Predominance: Defendants have engaged in a common course of conduct toward Plaintiff, Class Members, and Sub-Class Members, in that Plaintiff, Class and Sub-Class Members were induced into allowing a third party to make unauthorized withdrawals on their Chase accounts using Zelle. The common issues arising from Defendants' conduct affecting Class and Sub-Class Members set out above predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

63.     Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class and Sub-Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

prosecution of separate actions by individual Class and Sub-Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class and Sub-Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

64.      Defendants have acted on grounds that apply generally to the Class and Sub-Class, under Rule 23(b)(2) so that class certification is appropriate. Defendants, through their uniform conduct refusing to refund unauthorized transactions, acted or refused to act on grounds generally applicable to the Class and Sub-Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

65.      All Members of the proposed Class and Sub-Class are readily ascertainable. Chase and Zelle have access to consumer reporting of fraudulent and/or unauthorized transactions on their books and records. Using this information, Class Members can be identified and ascertained for the purpose of providing notice.

66.      Notice: Plaintiff anticipates providing direct notice to the Class and Sub-Class for purposes of class certification, via U.S. Mail and/or email, based upon Defendants' and/or Defendants' agents' records.

**COUNT ONE — VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT ("EFTA"), 5 U.S.C. §§ 1693, *ET SEQ.***

**(On Behalf of Plaintiff and the Class Against All Defendants)**

67.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

68.     The Electronic Fund Transfer Act ("EFTA") and Regulation E apply to electronic fund transfers that authorize a financial institution to debit or credit a consumer's account. 12 C.F.R. § 1005.3(a).

69.     The primary objective of EFTA is "the protection of individual consumers engaging in electronic fund transfers and remittance transfers." 12 C.F.R. § 1005.1(b).

70.     Financial institutions have error resolution obligations pursuant to Regulation E in the event that a consumer notifies the financial institution of an error. 12 C.F.R. § 1005.11.

71.     Chase is a bank and a financial institution pursuant to 12 C.F.R. § 1005.2(i).

72.     Zelle is an MPP and financial institution, as the applicable code, 12 C.F.R. § 1005.2(i), is interpreted by the Consumer Financial Protection Bureau and the Federal Deposit Insurance Corporation, because it issues an access device and agrees with a consumer to provide electronic fund transfer services.[17]

73.     "If a financial institution, within sixty days after having transmitted to a consumer pursuant to [15 U.S.C. § 1693d(a), (c), or (d)] or notification pursuant to [15 U.S.C. § 1693(d)] receives oral or written notice in which the consumer[:] (1) sets forth or otherwise enables the financial institution to identify the name and the account number of the consumer; (2) indicates the consumer's belief that the documentation, or, in the case of

---

[17] *Id.*

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

notification pursuant to [15 U.S.C. § 1693d(b)], the consumer's account, contains an error and the amount of such error; and (3) sets forth the reasons for the consumer's belief (where applicable) that an error has occurred," the financial institution is required to investigate the alleged error. 15 U.S.C. § 1693f(a)(1)-(3).

74.     After said investigation, the financial institution must determine whether an "error" has occurred and report or mail the results of such investigation and determination to the consumer within ten (10) business days. 15 U.S.C. § 1693f(a)(3).

75.     A financial institution that provisionally recredits the consumer's account for the amount alleged to be in error pending an investigation, however, is afforded forty-five (45) days after receipt of notice of error to investigate. *Id.* § 1693f(c).

76.     Pursuant to EFTA, an error includes "an unauthorized electronic fund transfer." *Id.* § 1693f(f)(1).

77.     An Electronic Fund Transfer ("EFT") is any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account. 12 C.F.R. § 1005.3(b)(1). Accordingly, Regulation E applies to any P2P or mobile payment transactions that meet the definition of EFT. 12 C.F.R. § 1005.3(b)(1); *id.*, Comment 3(b).

78.     Unauthorized EFTs are EFTs from a consumer's account initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit. 12 C.F.R. §1005.2(m).

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

79.     According to the CFPB and FDIC, when a third party fraudulently induces a consumer into sharing account access information, or debit card information that is used to initiate an EFT from the consumer's account, that transfer meets Regulation E's definition of an unauthorized EFT.[18]

80.     Comment 1005.2(m)-3 of Regulation E explains that an unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through robbery or fraud. As such, when a consumer is fraudulently induced into sharing account access information with a third party, and a third party uses that information to make an EFT from the consumer's account, the transfer is an unauthorized EFT under Regulation E.[19]

81.     Here, Plaintiff and other Class Members were fraudulently induced by a third-party scammer purporting to be Chase to share Zelle account information, personal information, login credentials and/or authorization codes.

82.     The third party then used the information obtained from Plaintiff and other Class Members to make unauthorized EFTs from the bank accounts of Plaintiff and other Class Members.

83.     After the unauthorized EFTs were made, the EFTs appeared on the bank statements of Plaintiff and other Class Members.

---

[18]  "Electronic Fund Transfers FAQs," Consumer Financial Protection Bureau, https://www.consumerfinance.gov/compliance/compliance-resources/deposit-accounts-resources/electronic-fund-transfers/electronic-fund-transfers-faqs/ (last updated Dec. 13, 2021).

[19] *Id.*

84.    Plaintiff and other Class Members then notified Chase and/or Zelle of these errors within sixty (60) days of their appearance on their accounts.

85.    Chase notified Zelle of Plaintiff's dispute with Chase and of the unauthorized transactions.

86.    Plaintiff notified Zelle of the unauthorized transactions within (60) days of their appearance on Plaintiffs' account.

87.    Upon information and belief, Defendants knowingly and willfully failed to fulfill their obligations to investigate Plaintiff's unauthorized transactions. Instead, they summarily concluded that Zelle fund transfers on Plaintiff's and other Class Members' accounts were not in error, when such conclusions could not reasonably have been drawn from the evidence available to the financial institutions at the time of the investigation. 15 U.S.C. § 1693f(e)(2).

88.    Upon information and belief, Defendants intentionally determined that the unauthorized Zelle fund transfers on Plaintiff's and other Class Members' accounts were not in error due, at least in part, to Chase's financial self-interest as a stakeholder in Zelle, and Defendants' desire to avoid their liability under EFTA and Regulation E resulting from the unauthorized transfers on Plaintiff's and other Class Members' accounts.

89.    Defendants refuse to reverse or refund money to Plaintiff and the other Class Members consistent with their obligations under Regulation E, §1005.6.

90.    As a direct and proximate result of Defendants' conduct, Plaintiff and other Class Members were unable to reclaim the funds that were taken from their accounts by scammers.

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

91.     As such, Plaintiff and other Class Members are each entitled to (i) actual damages; (ii) treble damages; (iii) the lesser of $500,000.00 or one percent (1%) of the net worth of Defendants; and (iv) reasonable attorneys' fees and costs. 15 U.S.C. §§ 1693f(e)(2), 1693m(a)(2)(B)–(3).

**COUNT TWO — VIOLATIONS OF ARIZONA CONSUMER FRAUD ACT ("ACFA") Ariz. Rev. Stat. § § 44-1521 *et seq.***

**(On Behalf of Plaintiff and the Arizona Sub-Class Against All Defendants)**

92.     Plaintiff realleges and incorporates herein by reference the allegations contained in all paragraphs 1-91, and further alleges as follows:

93.     The ACFA provides in pertinent part:

The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

*Id.* § 44-1522.

94.     Plaintiffs and the Arizona Sub-Class Members are "persons" as defined by Ariz. Rev. Stat. § 44-1521(6).

95.     Defendants provide "services" as that term is included in the definition of "merchandise" under Ariz. Rev. Stat. § 44-1521(5) and Defendants are engaged in the "sale" of merchandise as defined by Ariz. Rev. Stat. § 44-1521(7).

96.     Defendants engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

connection with the sale and advertisement of "merchandise" (as defined in the ACFA) in violation of the ACFA, including but not limited to the following:

     A.    By Defendant Zelle advertising its money transfer services as "a fast, safe and easy way to send and receive money";

     B.    By Defendant Chase advertising its mobile banking app services with Zelle as being "secure";

     C.    Failing to maintain sufficient security to keep Plaintiff and Sub-Class Member's confidential financial and personal data from being obtained by scammers;

     D.    Failing to disclose the Zelle scam to Sub-Class Members in a timely and accurate manner, in violation of Ariz. Rev. Stat. § 18-552(B);

     E.    Intentionally declining to reverse or to refund charges on the accounts of Plaintiff and Sub-Class Members even though they knew or should have known that said charges were in fact transactions not authorized by Plaintiff or the Sub-Class Members, and Defendants are obligated to reverse or refund them pursuant to EFTA.

     F.    Failing to adequately investigate the cause of unauthorized transactions because this would reveal the security limitations of the Chase/Zelle app and result in Defendants' liability for unauthorized transfers, which conflicts with Chase's financial interests in Zelle. On information and belief, the manner that Chase investigates, and processes, Zelle-related fraud claims differs from other similar investigations.

G.      Failing to take reasonable steps to adequately warn of known risks and/or dangers associated with the Chase/Zelle app and to take appropriate steps in response to a known scam involving the app to protect consumers; and

H.      Failing to take reasonable steps to develop and implement adequate safety precautions to mitigate against known, rampant Zelle app scams.

97.     The above unlawful, unfair, and deceptive acts and practices by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts cause substantial injury to Plaintiff and the Sub-Class Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

98.     As financial institutions, Defendants knew or should have known that their money transfer systems and security practices were inadequate to safeguard Sub-Class Members' bank accounts and that the risk of unauthorized transactions was high. Defendants' actions in engaging in the above-identified deceptive acts and practices were negligent, knowing, and willful, and/or wanton and reckless with respect to the rights of the Arizona Sub-Class Members.

99.     Defendants' acts or practices affect the public interest because there is a strong likelihood that additional consumers have been or will be injured in exactly the same fashion.

100.    Through their acts or practices, Defendants save themselves thousands of dollars which should have been credited to Plaintiff and the Arizona Sub-Class from their refusal to reverse or refund the unauthorized transactions.

101.    As a direct and proximate result of Defendants' deceptive acts and practices, the Arizona Sub-Class Members suffered an ascertainable loss of money or property, real or personal, as described above and were injured by Defendants' acts or practices in failing to reverse or refund funds and to comply with Regulation E.

102.    Pursuant to Ariz. Rev. Stat. §§ 44-1521, Plaintiff and the Arizona Sub-Class are entitled to preliminary and permanent injunctive relief that Defendants must comply with Regulation E.

103.    Pursuant to Ariz. Rev. Stat. §§ 44-1521, Plaintiff and the Arizona Sub-Class are entitled to restitution, actual damages, treble damages for each willful or knowing violation, and attorneys' fees and costs.

## COUNT THREE — NEGLIGENCE

### (On Behalf of Plaintiff, and the Arizona Sub-Class Against All Defendants)

104.    Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-91, and further alleges as follows:

105.    Chase owed Plaintiff and the Sub-Class at least a duty to take reasonable steps to safeguard customer financial information and protect their financial accounts from malicious third parties, to adequately warn of known risks and/or dangers associated with the Chase/Zelle app, and to properly investigate disputed transactions initiated and consummated through that app.

106.    Zelle owed Plaintiff and the Sub-Class at least a duty to take reasonable steps to adequately warn of known risks and/or dangers associated with the Chase/Zelle app, and

to take appropriate steps in response to a known scam involving the app to protect consumers from malicious third parties.

107. Defendants breached their obligations to Plaintiff and the Sub-Class Members and were otherwise negligent and/or reckless by at least:

a. Failing to maintain adequate data security measures to prevent or reduce the risk of disclosure of the names, phone numbers, and bank affiliation of Plaintiff and the Sub-Class to malicious third parties;

b. Failing to adequately protect the private information of Plaintiff and the Sub-Class;

c. Failing to properly warn Plaintiff and the Sub-Class of the risks and/or dangers associated with use of the Chase/Zelle app or informing consumers about the Zelle-related scams;

d. Failing to review account agreements and disclosures to ensure they do not attempt to diminish or limit consumers' rights under Regulation E;

e. Failing to take appropriate steps to prevent unauthorized transactions through the Chase/Zelle app in response to known scams and continuing with business as normal;

f. Failing to adequately investigate and document findings from investigations of fraud-related EFT disputes of the unauthorized transactions made on the accounts of Plaintiff and the Sub-Class using the Chase/Zelle payment platform;

g. Failing to implement appropriate and sufficient safeguards against scams of the nature alleged in the Complaint in light of the knowledge that those scams

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

have been rampant across the country;

        h.    Permitting scammers to use Zelle's member banks to siphon funds from Plaintiff and the Sub-Class's accounts using the Chase/Zelle payment platform;

        i.    Failing to reverse or refund unauthorized transactions pursuant to the Regulation E error resolution requirements following disputes of Plaintiff and the Class despite knowledge that the transactions were unauthorized as part of a scam that is well-known to Defendants; and

        j.    Failing to permanently reverse or refund unauthorized transactions upon a sufficient showing by Plaintiff and the Sub-Class that the transactions were unauthorized.

108.   As a direct and proximate result of Defendants' breach, Plaintiff and Sub-Class Members lost funds from their Chase accounts.

109.   Accordingly, Plaintiff and the Sub-Class Members are entitled to damages for their continuing and increased risk of fraud and their loss of money.

### COUNT FOUR — UNJUST ENRICHMENT

**(On Behalf of Plaintiff, and the Arizona Sub-Class Against All Defendants)**

110.   Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-91, and further alleges as follows:

111.   Defendants have been conferred an enrichment by keeping funds that Defendants are otherwise obligated to replace for Plaintiff and the Sub-Class Members pursuant to Regulation E's error resolution obligations.

Inspection

fold

clock

quick

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

112.    Defendants know and appreciate this enrichment and the impoverishment to Plaintiff and the Sub-Class.

113.    It is inequitable for Defendants to retain the enrichment by keeping these funds when they know that they are financial institutions and obligated to comply with Regulation E and credit Plaintiff and Sub-Class Members' accounts for the amounts taken.

114.    Plaintiff and the Sub-Class are impoverished by Defendants' failure to remedy this inequity and are entitled to restitution for the unjust enrichment to Defendants.

115.    Plaintiff and the Sub-Class are entitled to disgorgement and restitution in the absence of any legal relief.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against Defendants, and each of them, as follows:

1.    Class certification of this action;

2.    Appointment of Plaintiff as Class Representative;

3.    Appointment of Plaintiff's attorneys as Class Counsel;

4.    An award of actual damages, in an amount to be determined at trial;

5.    An award of treble damages against Chase and Zelle pursuant to EFTA;

6.    An award of the maximum allowable damages against Chase and Zelle pursuant to Ariz. Rev. Stat. § 44-1521;

7.    Injunctive relief pursuant to Ariz. Rev. Stat. § 44-1521 and other equitable relief against Defendants as necessary to protect the interests of Plaintiff

26

and other Sub-Class Members, and an order prohibiting Defendants from engaging in unlawful and/or unfair acts described above, including public injunctive relief;

8.    Disgorgement;

9.    An order of restitution from Defendants for unjust enrichment;

10.   Declaratory relief of an order declaring Defendants' conduct as unlawful;

11.   Costs of Suit;

12.   Pre- and post-judgment interest;

13.   An award of reasonable attorneys' fees; and

14.   Any other relief the Court may deem just and proper, including interest.

## VIII.   DEMAND FOR TRIAL BY JURY

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

DATED this 5th day of July 2022.

KELLER ROHRBACK L.L.P.

By: *s/ Ron Kilgard*
        Ron Kilgard, Bar No. 005902
        KELLER ROHRBACK L.L.P.
        3101 North Central Avenue, Suite 1400
        Phoenix, AZ  85012
        Phone: (602) 248-0088
        Email: rkilgard@kellerrohrback.com

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822

Laura R. Gerber (*pro hac vice* forthcoming)
Derek W. Loeser (*pro hac vice* forthcoming)
Nathan Nanfelt (*pro hac vice* forthcoming)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Phone: (206) 623-1900
Email: lgerber@kellerrohrback.com
Email: dloeser@kellerrohrback.com
Email: nnanfelt@kellerrohrback.com

David J. McGolthin, Bar No. 026059
KAZEROUNI LAW GROUP, APC
4455 E. Camelback Rd., Suite C250
Phoenix, AZ  85018
Phone: (602) 265-3332
Email: david@kazig.com

Abbas Kazerounian (*pro hac vice* forthcoming)
KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, CA  92626
Phone: (800) 400-6808
Email: ak@kazlg.com

Jason A. Ibey (*pro hac vice* forthcoming)
KAZEROUNI LAW GROUP, APC
321 N Mall Drive, Suite R108
St. George, UT  84790
Phone: (800) 400-6808
Email: jason@kazlg.com

***Attorneys for Plaintiff***

KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Telephone: (602) 248-0088
Facsimile: (602) 248-2822